UNITED STATES OF AMERICA
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ADRIANA FLETCHER | * | |
|     Plaintiff, | * | |
| v. | * | Civil Case No. 19-cv-02389-JMC |
| H.B. PROPERTIES ENTERPRISES INC., *et al*, | * | |
|     Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM</u>**

The case is before me for all proceedings by the consent of the parties pursuant to 28 U.S.C. § 636(c). (ECF No. 16). Now pending is H.B. Properties Enterprises, Inc., and H.B. Properties Management Company's (collectively "H.B. Defendants" or "Defendants") Motion to Dismiss, or in the Alternative, for Summary Judgment. (ECF No. 20). Adriana Fletcher ("Plaintiff" or "Ms. Fletcher") has filed an Opposition (ECF No. 23), and the H.B. Defendants have filed a Reply. (ECF No. 24). No hearing is needed. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons stated below the H.B. Defendants' Motion is GRANTED in PART and DENIED in PART.

I.    BACKGROUND

Ms. Fletcher has filed an employment discrimination claim against the H.B. Defendants. *See* 42 U.S.C. § 2000e-3 and 42 U.S.C. § 2000e-2. She contends that her rights were violated under Title VII of the Civil Rights Act of 1964. (ECF No. 1 at 5–6). Plaintiff's claims are asserted with respect to her work as a waitress and subsequent termination by Red Sky Steak and Fish House Restaurant ("the Restaurant")[1] located in Laurel, Maryland. *Id.* ¶ 6.

---

[1] The exact name of the Restaurant, seemingly, is uncertain. In Plaintiff's EEOC Complaint she referred to it as "Red Sky Restaurant." (ECF No. 23-5 at 2). In Plaintiff's Declaration she refers to the Restaurant as Red Sky Steak and

1

Plaintiff began working at the Restaurant in February 2016. On September 13, 2016, Ms. Fletcher was fired based on an incident with her supervisor that occurred on or about September 11, 2016. *Id.* ¶ 9.[2] She was reinstated after the restaurant investigated the incident. *Id.* ¶ 10. On or about October 23, 2016, Ms. Fletcher initiated a charge of discrimination against "Red Sky Restaurant" with the Baltimore field office of the EEOC. (ECF No. 1 ¶ 11). Specifically, Plaintiff wrote that she believed she was "suspended because of my race (black), in violation of Title VII of the Civil Rights Act of 1964, as amended." (ECF No. 20-3 at 2). After filing the charge of discrimination, Ms. Fletcher's typical schedule — five days of work per week— was reduced to approximately two days per week. (ECF No. 1 ¶ 13–14). On November 18, 2016, Ms. Fletcher asked a supervisor if she could see her personnel file. *Id.* ¶ 15. The supervisor asked Plaintiff if she felt that she was being discriminated against because of her race, to which she responded that she could not discuss the situation. *Id.* ¶ 16–17. The supervisor informed Ms. Fletcher that there was a document in her file indicating that she hated white people. *Id.* ¶ 18.

On December 14, 2016, the Restaurant suspended Ms. Fletcher from her job until December 20, 2016. *Id.* ¶ 19. The "Defendants" indicated that the suspension was based on Plaintiff flipping off a manager and using a derogatory term towards a co-worker, which Ms. Fletcher denies. *Id.* ¶ 20–21. On December 20, 2016, Ms. Fletcher returned to work and worked for the Defendants until February 14, 2017. *Id.* ¶ 21–22.

---

Fish House. (ECF No. 23-17 at 2). In the Employee Disciplinary Action Form, the Restaurant is self-titled Red Sky Steak and Fish House. (ECF No. 23-8 at 2). Nonetheless, on the Maryland Business records website, a search for Red Sky Steak and Fish House yields no results of Maryland businesses so-named. (ECF No. 23-13 at 3). Further, on the flyer posted within the Restaurant, the letterhead read Red Sky Steak & Fishhouse. (ECF No. 23-4). Given the exact name of the Restaurant is uncertain, the Court will simply refer to it as "the Restaurant."

[2] This information is based on Plaintiff's Complaint. However, in the underlying EEOC Charge (ECF No. 20-3), Plaintiff wrote that she was discharged on September 11, 2016, but, was reinstated as a "suspension served." *Id.* at 2.

Ms. Fletcher usually reported to work at 4 p.m. *Id.* ¶ 23. However, on February 14, 2017, she was supposed to report to work at 2 p.m. *Id.* ¶ 24. When Plaintiff did not report to work at 2 p.m., she received a call from her manager asking her to come in and that it was "fine." *Id.* ¶ 25. When Ms. Fletcher arrived at work that afternoon, she was promptly fired by another manager at the Restaurant. *Id.* ¶ 26. Ms. Fletcher acknowledges that she was late this day but contends that the "Defendants' proffered reasons for terminating [her] were merely a pre-text for their discriminatory intent according to the very manager that fired her." *Id.* ¶ 27.

At the time of her discharge, Plaintiff had worked at the "restaurant for approximately two (2) years." *Id.* ¶ 29. Specifically, Plaintiff argues "the Defendants reduced Ms. Fletcher's shifts, suspended her, and fired her while her previous charge of discrimination against the restaurant was pending." *Id.* ¶ 30. Plaintiff emphasizes that the "Defendants" knew that she had initiated a charge of discrimination against the Restaurant when they took adverse employment actions against her. *Id.* ¶ 31. Further, that these actions were causally connected to Plaintiff's initiation of discrimination charge with the EEOC. *Id.* ¶ 32.

On June 12, 2017 Plaintiff filed a Charge of Discrimination with the Baltimore field office of the EEOC alleging unlawful retaliation by "her former employer in violation of Title VII of the Civil Rights Act, EEOC Charge No.: 531-2017-02270." *Id.* ¶ 34. Plaintiff's Charge was filed against her "employer" Red Sky Restaurant, located at 14707 Baltimore Ave., Laurel, MD 20707. (ECF No. 20-5 at 2). In her Discrimination Charge, Plaintiff said:

> On October 23, 2016, I filed an EEOC charge of discrimination . . . against my former employer Red Sky Steak and Fish House on the basis of race (Black). After filing my charge Respondent accused me of not liking white people, harassed, intimidated, and retaliated against me by reducing my work hours from five to two days a week. On December 14, 2016, I was written up twice and suspended for five days by Mr. Raymond Tompkins, supervisor. In February 2017, I was discharge[d].

(ECF No. 20-5 at 2).

Since Ms. Fletcher's discharge, the "Defendants closed down Red Sky Steak and Fish House." (ECF No. 1 ¶ 35). However, the H.B. "Defendants remain in business and continue to operate other restaurants in and around the state of Maryland." *Id.* ¶ 36. The EEOC sent Plaintiff a Notice of Suit Rights letter on May 21, 2019. *Id.* ¶ 37. Within this letter, the EEOC stated that it was closing its file on this charge because: "Respondent is no longer in business." (ECF No. 20-6 at 2). This letter also indicated that a lawsuit must be filed within 90 days. *Id.* Plaintiff filed suit in this Court on August 19, 2019. (ECF No. 1).

## II.   LEGAL STANDARD

The H.B. Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), under which Plaintiff's pleadings are subject to dismissal if they "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" and must state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A claim has facial plausibility when the plaintiff, "pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Id.* ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atlantic Corp.*, v. *Twombly*, 550 U.S. 544, 555 (2007))).

In reviewing a 12(b)(6) motion, all well-pleaded allegations in a complaint must be considered as true, and all factual allegations must be construed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). A court decides whether the pleading standard is met by "separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining

4

whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

In the context of a Title VII case, "an employment discrimination plaintiff need not plead a prima facie case of discrimination" to survive a motion to dismiss. *Bing v. Brivo Sys., LLC*, 2020 WL 2530832, *8 (4th Cir. May 19, 2020). "Instead, a Title VII plaintiff is 'required to allege facts to satisfy the elements of a cause of action created by that statute.'" *Id.* (quoting *McCleary-Evans v. Maryland Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015)). The pertinent statute, Title VII, prohibits an employer from "discharg[ing] any individual, or [ ] otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Accordingly, our inquiry is whether Ms. Fletcher alleges facts that plausibly state a violation of Title VII "above a speculative level." *Bing*, 2020 WL 2530832, at *8 (quoting *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)).

In resolving a motion under Rule 12(b)(6), a court considers matters only within the pleadings. If matters outside the pleadings are presented, and are considered, the motion shall be treated as one for summary judgment pursuant to Rule 56. *Humphrey v. Nat'l Flood Ins. Program*, 885 F. Supp 133, 136 (D. Md. Apr. 28, 1995). "A district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Ervin v. Corizon Health*, 2020 U.S. Dist. LEXIS 85229, *32–36 (D. Md. May 13, 2020) (quoting Wright & Miller, 5 C Federal Practice & Procedure § 1366, 159 (3d ed. 2004, 2011 Supp.)). Courts are to consider whether "consideration of extraneous

5

material is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.*

However, before a Court converts a Rule 12(b)(6) motion into one for summary judgment, it must determine whether the plaintiff has adequate notice of conversion. *Mezu v. Morgan State Univ.*, 264 F. Supp. 2d 292, 295 (D. Md.), *aff'd sub nom.*, *Mezu v. Dolan*, 75 Fed. App'x 910 (4th Cir. 2003). As Plaintiff noted, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d), (ECF No. 23-1 at 5). When the movant expressly captions its motion "in the alternative" as one for summary judgment, as was the case here, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

Here, the H.B. Defendants submitted additional matters outside the pleadings for the Court's consideration. Specifically, they attached seven exhibits to the pending motion—which include (among other documents), a declaration from Harvey Blonder, the resident agent of H.B. Enterprises; Ms. Fletcher's two EEOC Charges; and printouts pertaining to the forfeited status of H.B. Properties Enterprises, Inc., from the Maryland State business express "entity search." (ECF No. 20-7), see State Department of Assessments & Taxation, D03117462, General Information, https://egov.maryland.gov/BusinessExpress/EntitySearch/BusinessInformation/D03117462.[3]

---

[3] We take judicial notice of these State Departments of Assessments and Taxation filings. *See MT Holding Corp. v. PNC Bank*, 2018 Md. App. LEXIS 805, *13 n.5 (Md. Ct. Spec. App. Aug. 20, 2018) (citing *Thomas v. Rowhouses, Inc.*, 206 Md. App. 72, 75 n.3 (2012)). Nevertheless, when a court considers relevant facts from the public record at the pleading stage, the court must construe such facts in the light most favorable to the plaintiffs. *Zak v. Chelsea Therapeutics In'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).

In response, Plaintiff herself invited conversion. In replying to this Motion to Dismiss, Plaintiff filed her own affidavit; copies of the underlying EEOC claims; employment termination "forms;" copies of Ms. Fletcher's notes; a printout of a flyer posted at the Restaurant; and a printout from the Maryland business express "entity search." *See* (ECF No. 23). Thus, Plaintiff was clearly on notice of the possibility that the Court would consider her affidavit and exhibits and convert the motion into one for summary judgment. *See Mezu*, 264 F. Supp. 2d at 295 (citing cases).

Plaintiff further seems to oppose summary judgment on the basis that more time is needed for discovery. In general, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours v. Kolon Inds.*, 637 F.3d 435, 448–49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To adequately raise the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d).

Rather than detail the particular fact discovery necessary, Plaintiff merely mentions the need for additional discovery in a footnote, stating "[g]iven the circumstances of the coronavirus pandemic, it is difficult for Ms. Fletcher to mount a full evidentiary defense to a motion for summary judgment in this response. Should this case proceed to the discovery phase, Ms. Fletcher would have the opportunity to subpoena James Hinkle and others for depositions." (ECF No. 23-

7

1 at 5 n.3). In addition to Plaintiff's failure to file an affidavit,[4] Plaintiff's request does not specifically articulate what discovery is necessary nor how such is relevant to the pending motion. *See Lowman v. Md. Aviation Admin.*, 2019 U.S. Dist. LEXIS 3702, *27 (D. Md. Jan. 8, 2019) ("Where a Rule 56(d) request is 'grounded in speculation' or 'would amount to a fishing expedition,' courts tend to deny the request."), *Gardner v. United States*, 184 F. Supp. 3d. 175, 185 (D. Md. 2016) (denying request because plaintiff expressed mere hope that discovery would yield evidence to establish claim). Thus, the Court finds that a lack of additional discovery, by itself, is not a reason to delay consideration of the instant motion.

For these reasons, the Court is satisfied that it is appropriate to evaluate the pending motion as one for summary judgment. In proceeding at the summary judgment posture, this Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). Accordingly, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218–19 (4th Cir. 2018).

III. DISCUSSION

Plaintiff asserts two Counts against the H.B. Defendants. As Plaintiff "concedes" to the dismissal of Count II, which is premised on racial discrimination, the Court will GRANT Defendants' Motion as to Count II. (ECF No. 23-1 at 8 n.3).

---

[4] Plaintiff's failure to file an affidavit was at her "peril because 'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Ervin*, 2020 U.S. Dist. LEXIS 85229, at *32 (quoting *Harrods*, 302 F.3d at 244).

In the remaining claim, Count I, Ms. Fletcher contends that she was retaliated against by the Defendants after she filed a discrimination charge against the Restaurant in October of 2016. (ECF No. 1 at 5). Specifically, Ms. Fletcher alleges that the Defendants' decisions to reduce her shifts, suspend her, and ultimately fire her, were causally connected to the Charge. *Id.* ¶ 40. Accordingly, Plaintiff contends the H.B. Defendants retaliated against her in violation of 42 U.S.C. § 2000e-3(a). *Id.* ¶ 41.

Primarily, the H.B. Defendants can be held liable in this Title VII action only if they are Plaintiff's "employer." See *Garnes v. Maryland*, 2018 U.S. Dist. LEXIS 672, *11 (D. Md. Jan. 3, 2018). Under the plain language of Title VII, an "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees . . . , and any agent of such person . . .". 42 U.S.C. § 2000e(b). Defendants H.B. Properties and H.B. Enterprises argue primarily that they are distinct from the Restaurant, and each other, and accordingly were not Plaintiff's "employers" under Title VII.

The H.B. Defendants argue, first, that H.B. Properties Enterprises, Inc. ("H.B. Enterprises") cannot be deemed Plaintiff's "employer" as it was merely a real estate holding company and never employed anyone. (ECF No. 24 at 6).[5] Mr. Harvey Blonder, the resident agent of H.B. Enterprises, testified to this information by affidavit. (ECF No. 20-8 at 2). Under the plain language of Title VII, an "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees" and "any agent of such person." 42 U.S.C. § 2000e(b). Plaintiff did not refute the affidavit submitted by Defendants, indicating that H.B. Enterprises never employed anyone, and accordingly under the plain language of the statute, H.B.

---

[5] The Maryland state records indicate the "business name" as HB Properties Enterprises, Inc., but nonetheless the Defendants refer to the entity as "H.B. Properties Enterprises, Inc." (ECF Nos. 20-7 & 20-8).

Enterprises does not qualify as an "employer." *See* (ECF No. 24 at 6). Accordingly, summary judgment is GRANTED as to COUNT II as to Defendant H.B. Properties Enterprises, Incorporated.[6]

Plaintiff acknowledges that H.B. Properties Management Company ("H.B. Management") was not her "employer" in the traditional sense. *See* (ECF No. 23-1 at 8). Nonetheless, Plaintiff argues that H.B. Management and the Restaurant should be held liable under the integrated employer theory.[7] Under the integrated employer theory "several companies may be considered so interrelated that they constitute a single employer" for purposes of Title VII. *Hukill v. Auto Car, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999), *abrogated on other grounds by Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006). The H.B. Defendants respond that Plaintiff does not allege sufficient facts to plead that H.B. Management was an integrated enterprise with the Restaurant. (ECF No. 24 at 3).

The Court of Appeals for the Fourth Circuit articulated a non-exhaustive four-prong test to determine whether two employers should be considered a single employer for purposes of Title VII liability: "(1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control." *Hukill*, 192 F.3d at 442. No single factor is conclusive; however, "control of labor operations is the most critical factor." *Id. See also Thomas v. BET Sound-Stage Rest.*, 61 F. Supp. 2d. 448, 456 (D. Md. 1999) (expounding on the *Hukill* factors).

---

[6] As this Court has determined that H.B. Properties Enterprises, Incorporated is not an "employer" as defined under the statute, the Court need not discuss Defendants' alternative argument that H.B. Properties Enterprises, Inc. was forfeited on or about October 13, 2017, after Plaintiff's termination, and thus is not subject to suit. (ECF No. 24 at 5–6).

[7] The integrated employer doctrine is distinct from the "single employer" or "joint" employment doctrine. Accordingly, the Court need not discuss those alternatives herein. See *Butler v. Drive Automotive Industries*, 793 F.3d 404, 408–11 (4th Cir. 2015).

The first and second factors – common management and interrelation between operations – consider whether a common manager runs day-to-day operations and has the authority to hire and fire employees or transfer them between locations. *Wright v. Mt. View Lawn Care*, 2016 U.S. Dist. LEXIS 31353, *23–24 (W.D. Va. Mar. 11, 2016), *see also Freire v. Keyston Title Settlement Servs.*, 2009 U.S. Dist. LEXIS 121190, *7 (D. Md. Dec. 29, 2009), *aff'd*, 389 Fed. App'x 306 (4th Cir. 2010). Here, Mr. Blonder testified that H.B. Management was not involved in the day-to-day operations of the restaurant, rather, the managers involved in Plaintiff's termination were employed by the Restaurant. (ECF No. 20-8 at 2–3). The H.B. Defendants also submitted an affidavit by Ray Tompkins, an employee of H.B. Management. (ECF No. 20-9). Mr. Tompkins testified that H.B. Management provides services to a variety of businesses, including Red Sky Steak and Fish House, including accounting, banking, and property management services. *Id.* at 1. Further, Mr. Blonder testified H.B. Management did not control the terms or conditions of employment for any of the employees of the Restaurant, and did not have managerial control over the Restaurant. (ECF No. 20-8 at 2). Mr. Tompkins also swore that "[n]either I, nor anyone else employed by H.B. Properties Management Company, played any part in [the Restaurant] having terminated the employment of Adriana Fletcher on or about February 14, 2017." (ECF No. 20-9 at 2).

In response, with respect to whether common manager runs day-to-day operations, Plaintiff provided the Court with a flyer, allegedly posted within the Restaurant. This flyer, written on Red Sky Steak & Fish house letterhead says "[a]bsolutely no gum chewing while at work. Someone just lost their job for this. This includes managers. Understood?" (ECF No. 23-4 at 2). This flyer was signed by "Raymond Tompkins *Area Manager.*" *Id.* The H.B. Defendants do not contest the authenticity of this flyer, but rather argue that the Court cannot consider it when deciding the

11

Motion to Dismiss, and if it does, the Court must convert this to a motion for summary judgment. (ECF No. 24 at 2). In the light most favorable to Plaintiff, this suggests that Mr. Tompkins, an H.B. Management Employee, had the authority to fire employees for infractions and to include managers, indicating a centralized control of labor relations. (ECF No. 23-4 at 2). This notice discussed previous managerial decisions, and the overseeing of management employees. Further, Mr. Tompkins identified himself as the area manager, on the Restaurant's Stationary. *Id.*

Mr. Tompkins also acknowledged that the Restaurant management called him, an H.B. Management Employee, to update him regarding personnel decisions, including "their decision" to terminate Ms. Fletcher's employment. (ECF No. 20-9). This aspect of his affidavit, in addition to the flyer, lend credence to the contention that Mr. Tompkins was involved in monitoring daily employee conduct, including the minute task of overseeing whether employees engage in gum-chewing. At the very least, Mr. Tompkins was admittedly kept in the "loop" of these decisions. (ECF No. 24 at 9). It is unclear why an employee of a separate entity would be informed immediately of personnel decisions; write and post notices at the location of another business entity regarding previous employment decisions (to which they were apparently uninvolved); and sign such notices "Area Manager." Accordingly, factors one and two weigh in favor of an integrated employer relationship.

With respect to the third factor, control of labor operations, H.B. Management argues that it does not control the Restaurant's employment decisions. See *Gilbert v. Freshbikes LLC*, 32 F. Supp. 3d 594, 603 (D. Md. 2014) (recognizing the third factor is shown when a single party controls employment decisions across multiple corporations). Employment decisions include the power to hire, fire, supervise, and set employee schedules. *Id.* Defendants provide sworn testimony that neither Mr. Tompkins nor "anyone else employed by H.B. Properties Management

Company, played any part in Red Sky Steak and Fish House having terminated the employment of Adriana Fletcher on or about February 14, 2017." (ECF Nos. 20-8 at 2 & 20-9 at 2). However, Plaintiff alleges that Mr. Tompkins was the individual who wrote her up, suspended her five days, and that he was her "supervisor." (ECF No. 20-5 at 2). At this stage, the Court must accept Plaintiff's factual allegations as true, including those within her EEOC discrimination charge (a document integral to her complaint). See *Zak*, 780 F.3d at 606–07, *Corneal v. McCurdy*, 2020 U.S. Dist. LEXIS 68939, *4 (D. Md. Apr. 20, 2020), *Bowie v. Univ. Md. Med. Sys.*, 2015 U.S. Dist. LEXIS 42433, *3 n.4 (D. Md. Mar. 31, 2015). Accordingly, Mr. Tompkins, an employee of H.B. Management, appears to have the authority to control the Restaurant's employment decisions. Consideration of this factor weighs in favor of an integrated employment relationship.[8]

The last element — common ownership — is shown when one individual owns and has financial control over the different enterprises. *See Watson*, 376 F. Supp. 2d at 598. Mr. Blonder testified that there is no common ownership or financial interest between the Restaurant and H.B. Management. (ECF No. 20-8 at 2). Specifically, Mr. Blonder testified that in return for providing services to the Restaurant, H.B. Management received a fee. *Id.* Plaintiff has provided no evidence of common ownership at this stage between these two entities, or evidence that tends to establish that one individual retained financial control over both. Rather, Plaintiff emphasizes that she cannot find *any* information pertaining to the ownership of Red Sky Steak & Fish House and has included an attachment illustrating that a search for this establishment, phrased in a variety of ways, leads to no results in the state database. (ECF Nos. 23-1 at 8, & 23-13).

---

[8] *Compare id.*, *with Wallace v. Bd. of Educ. of Calvert Cty.*, 2017 WL 2361161, *3 (D. Md. May 31, 2017) ("The only evidence arguably suggesting that the Board supervised Plaintiff is a single letter . . . . [E]ven this letter is devoid of any evidence that the Board disciplined Plaintiff or monitored her activities on a daily basis. Thus, even construing this letter in the light most favorable to Plaintiff, this factor too weighs against considering the Board as Plaintiff's employer.").

Ultimately, it will be Plaintiff's burden to demonstrate whether the common ownership factor favors her. Given that the Court has concluded that, taken in the light most favorable to Plaintiff, she has created an issue of fact with regard to the first three factors, her present inability to demonstrate factor four does not change the Court's analysis at this stage in finding summary judgment inappropriate as to Defendant H.B. Properties Management.

Whether separate entities can be joined as a single employer is a fact-intensive inquiry. *Gilbert,* 32 F. Supp. 3d at 603. Here, the limited evidence of record is in conflict, and this makes summary judgment inappropriate as to whether H.B. Management and the Restaurant can be held liable under the integrated enterprise analysis.[9] Plaintiff has alleged sufficient facts in her Complaint and supporting evidence to survive the motion for summary judgment. *See, e.g.*, *Thomas*, 61 F. Supp. 2d at 456. Denial as to this Defendant at this stage does not preclude a later motion by H.B Properties Management after discovery has closed.

Plaintiff also argues that H.B. Management created a respondeat superior relationship with the Restaurant such that Ms. Fletcher believed that H.B. Management controlled the operation of the business. (ECF No. 23-1 at 7). As the Defendants note, the instant case does not involve tort liability, but rather, discrimination. (ECF No. 24 at 7). Thus, in order to hold H.B. Management liable, Plaintiff must show that it meets the statutory definition of an "employer" under Title VII. *See Wright*, 2016 U.S. Dist. LEXIS 31353, at *23 (citing cases).

## IV.   CONCLUSION

For the reasons described above, the Court will:

---

[9] Notably, the H.B. Defendants do not challenge the substantive aspects of their potentially integrated "employer" status, such as the employee-numerosity requirement or the minimum workweek requirement.

1. GRANT Defendants' Motion as to Count II;

2. GRANT Defendants' Motion as to Count I with respect to H.B. Properties Enterprises, Incorporated;

3. DENY Defendant's Motion as to Count I with respect to H.B. Properties Management Company.

A separate Order shall follow.

June 4, 2020                               /s/
                                           J. Mark Coulson
                                           United States Magistrate Judge